*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re MITCHELL, Minors.

UNPUBLISHED
May 26, 2022

No. 358284
Wayne Circuit Court
Family Division
LC No. 2020-001136-NA

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his four minor children under MCL 712A.19b(3)(b)(*i*) (parent caused sexual abuse), (j) (reasonable likelihood child will be harmed if returned to parent), and (k)(*ix*) (sexual abuse of child). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This matter arose in December 2020 when petitioner, the Department of Health and Human Services (DHHS), filed a petition seeking termination of respondent's parental rights to his four minor children. The petition alleged respondent forced one of his minor children (the minor child) to provide him oral sex. During the termination proceedings, the referee admitted as substantive evidence the minor child's statements to a forensic interviewer regarding the sexual abuse. The minor child stated respondent "put his private part into her mouth," and respondent kept pushing the minor child closer to his penis when the minor child tried to push him back. When describing this event, the minor child demonstrated how respondent placed his hand on the minor child's head to force her head back and forth. During the incident, the minor child "felt like she wanted to choke and she wanted to throw up," and respondent told the minor child to "shut up" when she started making noises. The minor child then felt something "gooey" in her mouth, and respondent gave her a glass of juice before leaving her room.

Angelique Evans, the Children's Protective Services caseworker who initiated the petition, testified respondent consistently denied sexually abusing the minor child. Respondent also informed Evans he was also "being blamed" for sexually abusing his niece, which respondent also denied. Although the minor child told Evans she feared respondent as a result of the incident, the

other children told Evans they did not fear respondent. Each of the minor children stated they loved respondent and were bonded with respondent.

A trauma assessment introduced during the proceedings indicated the minor child had diminished cognitive abilities, and she felt safe with respondent, and did not display any trauma from the alleged sexually abusive incident. The trauma assessment also indicated the minor child stated (1) her initial account of respondent's sexual abuse "was a big fat lie," (2) she only dreamt the incident happened, (3) "she was sleeping the entire time," and (4) "her mouth felt weird" when she woke up. Evans acknowledged she was aware of the trauma assessment, but she disregarded the minor child's statements therein because she found her initial description of the incident to be more credible. Based on the minor child's allegations of sexual abuse, Evans believed termination of respondent's parental rights to all four children was in the children's best interests.

The referee concluded respondent forced the minor child to perform him oral sex on him rather than find that the minor child had dreamed the incident occurred. The referee also concluded respondent caused the minor child incomprehensible trauma, and all the children were at a risk of emotional harm if they remained with respondent. Accordingly, the referee found MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*) proved by clear and convincing evidence, and a preponderance of the evidence proved termination of respondent's parental rights was in the minor children's best interests. Accordingly, the trial court terminated respondent's parental rights. This appeal followed.

## II. ANALYSES

Respondent argues that the trial court erred in finding that clear and convincing evidence had been presented to terminate his parental rights. Respondent additionally argues termination of his parental rights was not in the minor children's best interests.

"This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). See also *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014) (stating dispositional orders "are afforded considerable deference on appellate review"). A finding of fact is clearly erroneous if the reviewing court has "a definite and firm conviction that a mistake has been committed," giving due regard to the trial court's "special opportunity . . . to judge the credibility of the witnesses." *Mota*, 334 Mich App at 320 (quotation marks and citations omitted); see also MCR 2.613(C); MCR 3.977(K).

A parent's "fundamental right" to "control the custody and care of [his or] her children is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *Sanders*, 495 Mich at 409-410. Once a trial court's jurisdiction over a minor child is established, "the trial court has broad authority to enter orders that are appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019) (quotation marks and citation omitted). However, a parent's right to manage the care of his or her child "does not evaporate simply because they have not been model parents," and "all parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody." *Sanders*, 495 Mich at 410, 412 (quotation marks and

citations omitted).  See also, *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

If DHHS files a termination petition, the trial court must hold a termination hearing to determine whether clear and convincing evidence establishes that "one or more statutory grounds for termination exist." *Ferranti*, 504 Mich at 16.  See also *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011) ("Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds.").  After the trial court exercises jurisdiction over the minor children and finds at least one statutory ground for termination, the trial court must terminate the respondent's parental rights if a preponderance of the evidence demonstrates termination is in the children's best interests.  MCL 712A.19b(5); *Mota*, 334 Mich App at 320.

Here, the trial court found at least one statutory ground to terminate respondent's parental rights.  In relevant part, MCL 712A.19b(3) allows a trial court to terminate a parent's parental rights if it finds any of the following proved by clear and convincing evidence:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.
>
> * * *
>
> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:
>
> * * *
>
> (*ix*) Sexual abuse as that term is defined in . . . MCL 722.622[(z) as engaging in sexual contact or sexual penetration with a child].  [MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*).]

"[T]he harm in question need not be physical; a risk of *emotional* harm can suffice." *In re Pederson*, 331 Mich App 445, 473; 951 NW2d 704 (2020) (quotation marks and citation omitted).  Moreover, "[e]vidence may be uncontroverted, and yet not be clear and convincing.  Conversely, evidence may be clear and convincing despite the fact that it has been contradicted." *Id*. at 472 (quotation marks and citations omitted).

Evidence presented at the hearing indicated that the minor child had initially told her mother and police that respondent forced her to perform oral sex. Later, at a trauma assessment session, the minor child indicated that she told "a big fat lie," about the sexual assault and went on to state that she could have dreamed the assault. From this conflicting testimony, the referee concluded the minor child's statements from the trauma assessment were further proof that a sexual assault had occurred. Specifically, the referee reasoned the minor child could not have been *lying* about the incident if she believed she *dreamt* the incident; it is either one or the other. Based on the minor child's statements that (1) her mouth felt weird after her "bad dreams" about respondent sexually abusing her, (2) her bad dreams stopped while the minor child was living apart from respondent, and (3) the minor child feared the bad dreams would return if she resumed living with respondent, after reviewing the forensic interview and determining her graphic allegations of sexual abuse were trustworthy, the referee concluded respondent committed the sexual assault.

Deferring to the referee's special opportunity to judge credibility, the referee's reasoning supports a finding that respondent's sexual abuse was proved by clear and convincing evidence. See *Mota*, 334 Mich App at 320 (explaining the clear-error standard of review); *Pederson*, 331 Mich App at 473 (explaining evidence that has been contradicted may still be clear and convincing). The referee also determined returning the minor child to respondent would be detrimental because it would only further traumatize her. Given the minor child's difficulty accepting the truth of respondent's sexual abuse, as demonstrated by her rationalizing the incident as a dream, it was reasonable for the referee to predict the minor child would suffer additional harm—physical or emotional—if she were returned to respondent's care. See *id*. (explaining *emotional* harm can suffice under MCL 712A.19b(3)). Based on this record, we do not have a "definite and firm conviction" the referee erred by finding respondent sexually abused the minor child and that she would likely suffer further harm from respondent. *Mota*, 334 Mich App at 320.

Although a trial court only needs to find one statutory ground to support termination, *Ellis*, 294 Mich App at 32, respondent's sexual abuse of the minor child also supported termination of his parental rights under MCL 712A.19b(3)(b)(*i*) (supporting termination if the parent's act caused sexual abuse to his or her child *or the sibling of the child* and the child will suffer if returned to parent), (j) (supporting termination if the child likely will be harmed if returned to the parent), and (k)(*ix*) (supporting termination if the parent sexually abused his or her child *or the sibling of the child* and the child likely will be harmed if returned to the parent). Additionally, because all four minor children are siblings, respondent's sexual abuse of one supported termination of his rights as to *all* the children under MCL 712A.19b(3)(b)(*i*) and (k)(*ix*).

Notwithstanding termination under MCL 712A.19b(3)(b)(*i*) and (k)(*ix*), respondent's sexual abuse of the minor child supported termination to all the minor children under MCL 712A.19b(3)(j) because, as the referee determined, each of the minor children would suffer emotional harm if they were returned to the care of their sister's abuser. This conclusion is reasonable because siblings of children that were sexually abused by one's parent often suffer emotionally. See *In re Hudson*, 294 Mich App 261, 269; 817 NW2d 115 (2011) (reasoning "[a]ll [the respondent's] children will have a lifelong struggle dealing with what happened to their family as the result of [the] respondent's reprehensible behavior" of sexually abusing her teenage daughter and lying about it). Additionally, under the doctrine of anticipatory neglect, that respondent sexually abused one of his minor children raises the risk that he may sexually abuse another of his

minor children.  See *Mota*, 334 Mich App at 323 (explaining how a parent treats one child is probative of how he or she may treat other children).

Because respondent placed each of the minor children at risk of physical or emotional harm by sexually abusing the minor child, clear and convincing evidence supported at least one statutory ground for termination of respondent's parental rights to all the minor children.  Consequently, we are not left with a definite and firm conviction the trial court made a mistake by finding statutory grounds to terminate respondent's parental rights.  *Mota*, 334 Mich App at 320.

Respondent also argues that the trial court erred in finding by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.  Respondent argues, and the record confirms, that each of the minor children, including the minor child who was the victim of respondent's sexual assault, had bonded with and loved respondent.  However, our review of the record submitted in this matter leads us to conclude that the trial court properly determined termination of respondent's parental rights was in the minor children's best interest.

With respect to a child's best interests, we focus on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). In assessing a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that "the child could be returned to [the] parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Although a trial court may consider a wide range of factors in determining the children's bests interests, an "especially egregious" single act may serve as the basis for terminating a respondent's parental rights.  *Mota*, 334 Mich App at 322-323 (stating a "single act of sexual abuse . . . revealed a side of [the] respondent that posed a serious danger to his minor children" and supported terminating his parental rights).  Here, the same reasons that supported statutory grounds for termination of respondent's parental rights also demonstrate termination was in the minor children's best interests: respondent demonstrated an inability to parent the minor children when he sexually abused one of the minor children.  The referee noted she considered the best interests of each child individually, but determined they were all affected—directly or indirectly— by respondent's sexual abuse of the minor child.  As the referee explained, respondent's clear bond with the children did not prevent him from sexually abusing the minor child, an act for which respondent refused to accept responsibility or express remorse; both of which demonstrate the risk respondent posed to each of the children.  See *id*. (finding termination was in the children's best interests when the respondent's bond with the child did not prevent him from exploiting and abusing the child).  Respondent's bond with the children also did not outweigh the immense harm

he caused the children or the children's need for permanency and stability—conditions the children could not achieve if returned to respondent.[1]

Our review of the record evidence presented in this matter leads us to conclude that the trial court properly concluded, by clear and convincing evidence that statutory grounds existed to terminated respondent's parental rights to the minor children. Additionally, we conclude that the trial court properly found by a preponderance of the evidence that termination of respondent's parental rights was in the minor children's best interests. We therefore affirm the trial court. *Mota*, 334 Mich App at 320, 322-323.

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood

---

[1] We are unclear as to respondent's arguments regarding the placement of the children with their biological mother as providing a "less restrictive alternative" to termination. Having concluded that termination was in the children's best interests and the minor children were in the custody of their biological mother, there does not appear to this Court a coherent argument on which relief may be granted.